IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCIS TEJANI KUNDRA, | § | |
| NO.A20661647, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-06-710 |
| | § | |
| T. JOHNSON, *et al.*, | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff, who is currently detained in the Correctional Corporation of America Detention Center ("CCA"), brings this action for violation of his civil rights. For the reasons to follow, the Court will dismiss the complaint with prejudice.

I. BACKGROUND

Plaintiff reports that on January 25, 2006, he hit his head three times on a top bunk in his assigned dormitory. (Docket Entry No.1). The third time he blacked out. When he awoke he could see nothing but stars and shades of red, green, and purple. He also experienced memory loss and confusion. (*Id.*). Other detainees poured water on his head and gave him something to drink. They moved him to another bunk, which was unoccupied. (*Id.*). Plaintiff maintains that when Officer Johnson came into the dormitory for count, plaintiff told Johnson that he needed to see a doctor and that he wanted to move to the new bunk. Johnson yelled at plaintiff to move back to the original bunk or go to lock up.[1] Plaintiff went with Johnson to an isolation cell, where Johnson and his supervisor pushed plaintiff into the cell and slammed the door. (*Id.*).

---

[1] Plaintiff's exhibits show that Officer Johnson filed disciplinary case number 06026 against plaintiff for failure to follow orders. (Docket Entry No.1, Part 2, page 16). Johnson indicated that plaintiff had informed him that he had switched bunks and when Johnson told plaintiff that he had to put in a request to switch bunks, plaintiff refused to move back to his assigned bunk. Johnson advised plaintiff of his rights but plaintiff refused to sign the form. (*Id.*). Plaintiff was admitted to pre-hearing detention on January 26, 2006. (*Id.*, page 15).

Plaintiff claims while in isolation, he begged for medical attention but he was told to "shut up" because he was being punished. (Docket Entry No.1). Three days later, a captain opened the food slot and told plaintiff that he would receive fifteen more days of isolation. (*Id.*). Plaintiff protested and told the captain that he was entitled to an administrative hearing so that he could challenge Officer Johnson's conduct. (*Id.*). The captain laughed and slammed the slot.² (*Id.*). An Immigration and Naturalization ("INS") official left a note upholding the actions of the CCA officers. (*Id.*).

On February 3, 2006, nine days after being locked in isolation, a classification officer informed plaintiff that he was being released from isolation and moved to a higher security watch. (*Id.*). Plaintiff again requested to see a doctor. This time, he saw a physician's assistant ("PA"), who dismissed his complaints and gave him Tylenol. (*Id.*). On February 9, plaintiff saw a medical doctor, who told him there was nothing she could do for him and that the PA's notes indicated that he had complained of back pain. (*Id.*).

In grievance number 3671, dated February 4, 2006, plaintiff complained that he was placed in solitary confinement without a physical examination. Plaintiff also complained that he had been denied a hearing before a disciplinary board, as opposed to an administrative officer, and thus denied the opportunity to present evidence of the bunk bed's deficiencies and the unreasonableness of Officer Johnson's order to return to the defective bunk. (Docket Entry No.1, part 2, pages 8-13). In a response dated February 16, 2006, Grievance Officer D. Kinney found some merit to plaintiff's

---

² Plaintiff's exhibits show that a disciplinary hearing was conducted by a hearing officer on January 29, 2006. Plaintiff was found guilty and punishment assessed at fifteen days disciplinary segregation and seven days recreation restriction. (Docket Entry No.1, part 2, page 15). Plaintiff refused to sign the hearing report. (*Id.*). On February 1, 2006, Supervisory Detention Enforcement Officer Ruiz reviewed plaintiff's disciplinary segregation and recommended that plaintiff remain in segregation. (*Id.*, page 14).

allegations that he was denied a physical exam prior to placement in pre-hearing detention and his complaint that he had been denied due process. Consequently, disciplinary case number 06026 was expunged from plaintiff's records. (Docket Entry No.1, Part 2, page 7).

In grievance number 3674, dated February 9, 2006, plaintiff complained that the Tylenol that he received on February 4, 2006, was insufficient to treat the concussion that he allegedly received on January 26, 2006. In a response dated February 17, 2006, Grievance Officer D. Kinney found that plaintiff had been seen on several occasions by medical staff and treatment assessed according to medical needs at that time. (*Id.*, part 2, page 1). In another grievance dated February 12, 2006, plaintiff complained that the PA mis-diagnosed his complaint of a head injury as one of back pain. (*Id.*, page 3). In response, plaintiff was referred to the disposition of grievance numbers 3671 and 3674. (*Id.*).

In the pending complaint, plaintiff seeks relief on the following grounds:

1.  Officer Johnson engaged in cruel and unusual punishment by denying plaintiff medical treatment for a concussion and ordering plaintiff to return to his bunk or to an isolation cell;

2.  Plaintiff was denied medical treatment before placement in pre-hearing detention;

3.  Plaintiff's due process rights were violated when he was denied an administrative hearing by a disciplinary board where he could challenge the reasonableness of complying with Johnson's order to return to an unsafe bunk; and,

4.  The INS went along with the alleged abuse.

(Docket Entry No.1). Plaintiff seeks a declaration that defendants' conduct was unlawful and an injunction ordering defendants to establish a legitimate hearing and administrative process and not to abuse prisoners. He also seeks punitive damages for the pain and suffering that he experienced

and for future permanent injuries due to defendants' negligent medical treatment. He also seeks attorney's fees and a $1,000,000.00 settlement. (*Id*.).

## II. DISCUSSION

Civil rights claims brought under 42 U.S.C. § 1983 are limited to constitutional violations by state officials. *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999), *overruled on other grounds by Castenllano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003), *cert. denied*, 543 U.S. 808 (2004). Because plaintiff is detained at the CCA on behalf of a federal agency and his claims are against two employees of a private entity and a federal agency, he cannot bring this action under § 1983.

### A. The CCA

The violations of a person's constitutional rights by a federal official may give rise to an action for damages in federal court against a government officer in his individual capacity, even though § 1983 does not apply. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). No implied private right of action exists, pursuant to *Bivens*, for damages against private entities that engage in alleged constitutional deprivations while acting under color of federal law. *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001). Therefore, to the extent that plaintiff seeks declaratory and injunctive relief or punitive damages from the CCA for its alleged due process violations relating to his confinement in administrative segregation or from defendants Officer Johnson and Warden Lacy in their official capacities, as employees of the CCA, this Court is without subject matter jurisdiction to consider such claims.

### B. CCA Employees

Whether plaintiff may sue defendants Johnson and Lacy in their individual capacities under *Bivens* is an open question in this Circuit because they are private individuals and not federal employees. *See Malesko*, 53 U.S. at 65 (noting that the question whether a *Bivens* action against a private individual was not presented). To the extent that this Court does not have subject matter jurisdiction over plaintiff's claims against private employees Johnson and Lacy, plaintiff's complaint will be dismissed for want of jurisdiction. *See Holly v. Scott*, 434 F.3d 287, 296 (4th Cir. 2006) (holding after careful analysis that an inmate in a privately run federal correctional facility does not require a *Bivens* cause of action for monetary damages where state law provides him with an effective remedy); *Peoples v. CCA Detention Ctrs.*, 422 F.3d 1090, 1102 (10th Cir. 2005) (same). To the extent that this Court has subject matter jurisdiction over plaintiff's claims against Johnson and Lacy, the Court will dismiss these claims for the reasons to follow.

#### 1. *Respondeat Superior*

There is no doctrine of *respondeat superior* in *Bivens* actions. *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993). Consequently, defendant Warden Lacy may be held liable only if the warden is personally involved in the acts causing the deprivation of a plaintiff's constitutional rights or if he or she implemented a policy so deficient that the policy itself acts as a deprivation. *Cronn v. Buffington*, 150 F.3d 538, 544-45 (5th Cir. 1998) (citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

In this case, plaintiff states no facts that indicate that Lacy was personally involved in the events giving rise to plaintiff's complaint. Plaintiff states no facts that would give rise to a claim

that Lacy acted with deliberate indifference to plaintiff's rights by the implementation of a deficient policy with respect to the supervision of the CCA's employees.

Accordingly, plaintiff's claims against defendant Lacy are subject to dismissal.

### 2. Medical Care

The Constitution establishes a floor of rights to be afforded to any person found within United States territory. Therefore, the Supreme Court has mandated continuously that all persons, whether citizens or aliens, are entitled to the Fifth and Fourteenth Amendments' protection against deprivations of life, liberty, and property without due process of law. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). These protections apply to all aliens whether seeking entry at the border or in the interior, either legally or illegally. *United States v. Henry*, 604 F.2d 908, 914 (5th Cir. 1979).

Although plaintiff has a criminal record, his detention in the CCA did not directly result from a conviction for a crime; therefore the Eight Amendment's prohibition against cruel and unusual punishment is inapplicable. *See Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986). *See also Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 372 n. 1 (1992). A person detained for removal is considered to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the Due Process Clause instead of the Eighth Amendment. *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000).

Under due process analysis, the Court must first classify whether plaintiff's complaint is an attack on a "condition of confinement" or an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997). The former category would include such claims as "where a detainee complains of the number of bunks in a cell or his television or mail privileges." *Id.* The latter category, on the other hand, occurs "where the complained-of harm is a particular act or omission

of one or more officials." *Id.*  In this case, plaintiff's complaint against Johnson and medical personnel turns on Johnson's alleged failure to secure medical treatment after being told of such need and before placing plaintiff into pre-hearing detention, and the medical treatment plaintiff received.  Such a complaint perfectly fits the definition of the episodic omission.

In an episodic act or omission case, a plaintiff must establish that the official acted with subjective deliberate indifference to prove a violation of his constitutional rights.  *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir. 1999).  An official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."  *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).  "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Sibley v. Lemaire,* 184 F.3d 481, 488 (5th Cir. 1999).  A reckless disregard of a risk of serious harm is more than negligence.  One acts with a reckless disregard or a risk of serious harm when he is aware or should have been aware of an unjustifiably high risk of harm and failed to act.  *Id.*

In this case, plaintiff's pleadings do not show that Johnson was aware or should have been aware that plaintiff had sustained a serious head injury and failed to seek medical attention.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for condemnation, cannot . . . be condemned as the infliction of punishment."  *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).  Plaintiff alleges that he told Officer Johnson that he needed medical care when Johnson came into the dormitory, but plaintiff states no facts to show that Johnson saw a bump, bruise, or any head injury or that Johnson was aware or should have been aware that plaintiff had hit his head so hard that he required medical attention.  Although plaintiff

claims that he blacked out, saw stars and shades of red, purple, and green, and experienced confusion and memory loss, plaintiff states no facts to show that Johnson was aware that plaintiff had experienced such symptoms. Plaintiff indicates that when Johnson arrived on the dorm, plaintiff was awake and sitting on an unassigned bunk. Plaintiff informed Johnson that he wanted to switch bunks. Johnson offered plaintiff a choice of either returning to his assigned bunk or going to an isolation cell. Plaintiff chose to walk with Johnson to the isolation cell.

To the extent that Johnson violated CCA or agency rules by not seeking medical attention before taking plaintiff to pre-hearing detention, such conduct does not implicate due process in this case. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that the failure to follow prison administrative rules and regulations does not raise a federal constitutional issue as long as minimum constitutional requirements are met). Accordingly, plaintiff's claim against Johnson is subject to dismissal.

Plaintiff also fails to state facts to show that medical providers were deliberately indifferent to his serious medical needs or that he suffered substantial harm from the delay in receiving medical attention. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that any delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm). Plaintiff states that he begged for medical treatment the day he was placed in the isolation cell but he did not put in a sick call request until the ninth day of his incarceration in the cell. (Docket Entry No.1). Although plaintiff complains that his injuries persist, his medical records, which he attached to his supplemental pleadings, do not show that he suffered a concussion or that he has been impaired in any way from bumping his head on the bunk or from any delay in treatment. (Docket Entry No.5). Moreover, plaintiff's pleadings show that he received

medical attention.[3] Plaintiff's dissatisfaction with the medical treatment that he received does not mean that he suffered deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997). Accordingly, plaintiff's claims with respect to the denial of medical care are subject to dismissal.

## C. Federal Agency

The INS, as an agency of the United States government, is immune from suit except as the United States waives its sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). The Court's holding in *Bivens* provides a cause of action only against government officers in their individual capacities. Plaintiff has not named any INS agent as a defendant nor alleged that any INS agent acted in his individual capacity to deprive plaintiff of due process. Therefore, the Court lacks jurisdiction to consider plaintiff's claim that the INS approved the "illegal" acts of CCA employees.

Plaintiff has not made any claims against the Department of Homeland Security. Accordingly, plaintiff's claims against this defendant will be dismissed.

---

[3] Plaintiff's exhibits show that on January 30, 2006, four days after plaintiff was placed in the Special Housing Unit, he received a brief psychological evaluation by a mental health provider during weekly rounds. (Docket Entry No.5, page 3). The provider noted that plaintiff denied any distress or any symptoms of a mood, anxiety, or thought disorder. He was eating and sleeping well and appeared to be stable. (*Id.*). Medical notes dated February 5, 2006, however, reflect that plaintiff complained of headaches, blackouts and dizziness with flashes of red, green, and purple. (*Id.*, page 4). He was diagnosed with a benign back musculoskeletal discomfort and given Tylenol for pain. (*Id.*). Medical notes dated February 10, 2006, reflect plaintiff's complaint of dizziness, spots, and loss of vision and his desire for medical personnel to file a report and request more work-up. (*Id.*, page 6). Plaintiff, however, appeared neurologically intact, with full muscle strength, and normal gait to the treating physician. (*Id.*, page 7). She saw no evidence of neurological damage and recommended that his symptoms be monitored as needed, via sick call. (*Id.*).

III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Plaintiff's application to proceed *in forma pauperis* (Docket Entry No.2) is GRANTED.

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

3. All pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

Signed at Houston, Texas, on April 21, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE